UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BANK OF AMERICA, N.A.,

Plaintiff,

v.

CAUSE NO. 3:21-CV-184 DRL-MGG
(consolidated cases 3:21-CV-191 and
3:21-CV-236)

LEVERING RUSSELL CARTWRIGHT *et al.*,

Defendants.

OPINION & ORDER

Levering Russell Cartwright, an elderly gentleman in assisted living, wants Bank of America, N.A. (BANA) to let him do what he wants with his own money (held in a revocable trust). BANA continues to pay his assisted living costs, credit cards, and other daily expenses from the trust but declines to let him transfer all his assets to a close and trusted friend or alternatively to transfer the funds to another bank to facilitate this gift. The bank fears elder abuse.

In 2014, Mr. Cartwright befriended Judge Jason Cichowicz after using his services as a then-attorney. Their professional relationship ostensibly ended, but the two men grew closer over the years until Mr. Cartwright named Judge Cichowicz the primary beneficiary under his trust in 2015, reaffirmed in an amended trust in 2018 with the addition of the judge's spouse and children as successor beneficiaries. Mr. Cartwright remains estranged from his two biological children.

In 2020, Mr. Cartwright asked BANA to transfer all his trust assets to Judge Cichowicz. BANA thought this fishy based on a host of circumstances, so it blocked the transfer under its Investment Services Agreement and later Mr. Cartwright's full access to the trust assets. This litigation ensued—now consolidating three actions. Today Mr. Cartwright wants the trust assets transferred to another bank, though still with the ultimate goal of gifting the assets to the judge. BANA declines.

Without the bank's compliance, Mr. Cartwright now requests a preliminary injunction. The court held an evidentiary hearing. Mr. Cartwright has not shown irreparable harm or the absence of an adequate remedy at law, so the court denies his motion.

FACTS

Today's decision remains relatively straightforward despite a complex procedural web of motions, pleadings, and claims that entangle this consolidated action. At age 81, Levering Russell Cartwright has banked with BANA for many years. The issue today concerns his 1993-2 Trust—a revocable trust whose account at BANA holds about $7.2 million in assets under an Investment Services Agreement [Exs. 2, 4]. Mr. Cartwright is the trustee.

Over the course of 2020, Mr. Cartwright grew concerned about possible tax changes from a new presidential administration—estate taxes and capital gains restructuring [Tr. 59; Ex. 6, 7, 20]. He worried that his assets would be "decimated by these tax laws" [Tr. 60]. To alleviate these anticipated negative consequences to his assets, on December 11, 2020, Mr. Cartwright directed BANA to transfer the 1993-2 Trust assets to his friend and attorney-in-fact, Judge Jason Cichowicz [Tr. 59-60; Ex. 22].

Pursuant to the Investment Services Agreement, BANA provided advice at first against this planned transfer. In addition, the bank explained that Mr. Cartwright's $1.7 million line of credit with the bank, secured by the trust assets, would need to be fully paid [Tr. 62, 192; Ex. 22]. Seven days later, Judge Cichowicz asked BANA for the account and payoff information, indicating that he planned to have Notre Dame Federal Credit Union (NDCU) wire money to pay the outstanding line of credit and that he wanted this done the next business day [Ex. 23].

According to Mr. Cartwright, "Jason [Cichowicz] took me to see someone at Notre Dame Credit Union, and they were willing to accept the trust and give Jason a period of time to pay off the loan rather than all at once" [Tr. 62-63]. Mr. Cartwright displayed confusion over the events here. He believes that he and Judge Cichowicz are both co-borrowers on the loan, saying "[h]e's liable for the

$1.7 million loan . . . and so am I" [Tr. 78-79, 92-93]. But the NDCU loan agreement exists with Mr. Cartwright and the 1993-2 Trust as co-borrowers, not Mr. Cartwright and Judge Cichowicz [Ex. 50]. When asked whether he has made payments on the NDCU loan in 2021, Mr. Cartwright testified, "Jason Cichowicz has been making payments on the loan" [Tr. 91]. When asked whether he knew his account was being used to make the payments, he testified only that he "guess[ed] so" [*id.*].

Judge Cichowicz used the NDCU loan proceeds to pay BANA's line of credit [Ex. 25], though Mr. Cartwright mistakenly believes the loan was merely transferred from BANA to NDCU [Tr. 62-63]. NDCU secured its $1.7 million loan with the trust assets [Tr. 78; Ex. 50]. On December 20, 2020, Mr. Cartwright signed a written directive to BANA to transfer all trust assets to an account at NDCU, but only in Judge Cichowicz's name, not in Mr. Cartwright's name [Ex. 24]. Judge Cichowicz emailed this directive to NDCU on that Sunday, and the two banks communicated three days later about the anticipated transfer [Ex. 25]. Eight days later, and after multiple inquiries from Judge Cichowicz, BANA explained that the transfer was under legal review [Ex. 26].

On January 7, 2021, BANA declined the transfer because it believed Judge Cichowicz may be financially exploiting Mr. Cartwright [Tr. 123; Ex. 26, 29]. Under its Investment Services Agreement, BANA "is not required to act on any instructions when the Bank in good faith doubts the validity or meaning of such instructions" [Ex. 4 at 13]. In addition, under this agreement, BANA "is not required to comply with any direction which the Bank believes may subject [it or an affiliate] to liability or expense, or to commence or defend any action, unless the Bank consents to, and is indemnified in a manner and amount satisfactory to the Bank" [*id.*]. These contractual provisions are quite aside from Indiana's Financially Vulnerable Adult Act—a law added to the securities act in 2016 to protect against elder financial abuse. *See* Ind. Code § 23-19-4.1 *et seq*.

On February 12, 2021, Mr. Cartwright's estate counsel shared with BANA's counsel that Mr. Cartwright would execute a waiver of liability and indemnity agreement [Ex. 48]. This apparently

3

proved unworkable, and BANA filed the first lawsuit seeking a declaratory judgment on its rights and obligations vis-à-vis Mr. Cartwright on March 12, 2021. Frustrated in his current course, Mr. Cartwright changed course: he told the bank that he terminated Judge Cichowicz's power of attorney and requested that the bank terminate the judge's authority over his accounts on March 15, 2021 [Exs. 31-32]; and then changed his mind once more on March 26, 2021, then directing BANA to close all his accounts so he could transfer them to a "new institution" [Ex. 33]. BANA again declined, saying it retained concerns over elder financial abuse [Tr. 123].

Mr. Cartwright sued to reclaim full control over the trust assets. Though BANA hadn't restricted all access to his accounts—he could still write checks, withdraw funds, pay expenses, and the like—the bank would not comply with his instructions related to Judge Cichowicz or NDCU. Mr. Cartwright continues to receive income of about $380,000 annually from two separate irrevocable trusts created by his parents and over which BANA serves as trustee [Tr. 49, 60, 69-70]. BANA asserts that it is endeavoring to act in Mr. Cartwright's best interests to prevent elder abuse, while Mr. Cartwright claims the bank is self-interested because it earns about $170,000 in annual revenue from his assets [Tr. 183; *see* Ex. 4 at 6-9; Exs. 35-39].

This action consolidates three related actions—claims by BANA (3:21cv184), claims by Mr. Cartwright (3:21cv191), and claims by the Cartwright Foundation and Judge Cichowicz for BANA's refusal to transfer assets of another trust (3:21cv236). Today the court decides only whether Mr. Cartwright is entitled to a preliminary injunction telling BANA "to stop interfering with the transfer of the trust" [Tr. 195]. "Uppermost in [his] mind is giving the money to Jason Cichowicz" [Tr. 96].

STANDARD

A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain an injunction, a plaintiff "must make a threshold showing

that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)). The showing of likelihood of success on the merits must be "strong," which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020)). If the plaintiff makes these threshold showings, the court "consider[s] the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Id.* at 613 (quotation omitted). The plaintiff's burden is higher when, as here, he requests a mandatory preliminary injunction—one "requiring an affirmative act"—because these are "ordinarily cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quoting *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)).

DISCUSSION

Whatever Mr. Cartwright's likelihood of success, or the visceral reaction one might have to a private bank interceding to refuse a gentleman's request to gift his own assets, even if well intentioned, the simple fact remains that he has not shown irreparable harm on this record. Without irreparable harm, he cannot obtain a preliminary injunction.

Irreparable harm is "harm that cannot be repaired and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)) (quotations omitted). To cause irreparable harm, an injury "must be of a particular nature, so that compensation in money cannot atone for it." *Graham*, 130 F.3d at 296 (citation omitted); *see Baskin v. Bogan*, 983 F. Supp.2d 1021, 1027 (S.D. Ind. 2014). Monetary damages, which Mr. Cartwright alone seeks, generally don't constitute irreparable harm. *See, e.g.*, *D.U. v. Rhoades*,

5

825 F.3d 331, 339 (7th Cir. 2016); *Signode Corp. v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1111 (7th Cir. 1983).

To this point, the second amended complaint seeks only money damages. It is titled as much. The allegations likewise spell out the relief of money damages, including "an amount to compensate him for all pecuniary, incidental, consequential, special, punitive, and exemplary damages" and action-related costs and fees [ECF 42 ¶ 3 and pg. 27]. The complaint contained a passing reference to injunctive relief [*id.* ¶ 8] that rested on a replevin claim [*id.* ¶¶ 169-79], but that claim has since been withdrawn. The pleading that frames this case thus speaks only in terms of money damages. In addition, Mr. Cartwright echoed these requests in pleading for money damages at the preliminary injunction hearing.

There are exceptions to the general rule that money damages aren't irreparable: the harm may be irreparable if damages are "seriously deficient as a remedy for the harm suffered." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984); *see Mike Avila Trustee v. Bronger Masonry, Inc.*, 123 F. Supp.3d 1088, 1098 (S.D. Ind. 2015). These exceptions include when the plaintiff risks insolvency; when he cannot continue his lawsuit in the absence of a preliminary injunction; when he may become insolvent before the dispute's resolution; or when damages are "very difficult" to calculate. *Roland Machinery*, 749 F.2d at 386. But Mr. Cartwright's situation doesn't fall within any of these exceptions. He can access his money and assets. BANA continues to provide him with monthly distributions from the Trust. He has money to litigate this case. BANA isn't risking insolvency. The damages here wouldn't be difficult to calculate. Contrary to Mr. Cartwright's argument, this case isn't analogous to *ManPower, Inc. v. Mason*, 377 F Supp.2d 672, 676 (E.D. Wis. 2005), where a court in this circuit—relying on *Roland*—held that money damages constituted irreparable harm because it would come too late to save the business of the party seeking the preliminary injunction. Mr. Cartwright isn't a business, nor is he risking insolvency or an inability to finance his daily needs.

Mr. Cartwright pivots to argue that irreparable harm needn't be shown at all. He says when there is an ongoing unlawful act—in this case, BANA's refusal to allow him to control his assets—irreparable harm need not be established. But his argument seems off the mark: though there are instances when the court may bypass the irreparable harm requirement, that is limited to when a statute explicitly authorizes it. *See Bedrossian v. N.W. Memorial Hosp.*, 409 F.3d 840, 843 n.1 (7th Cir. 2005). Indeed, "unless a statute clearly mandates injunctive relief for a particular set of circumstances, the courts are to employ traditional equitable considerations (including irreparable harm) in deciding whether to grant such relief." *Id.* at 843. To hold otherwise "would be inconsistent with a district court's discretion to grant injunctive relief." *Bader v. Wernert*, 178 F. Supp.3d 703, 728 (N.D. Ind. 2016). Mr. Cartwright doesn't point to any federal law that would permit the court to forego the irreparable harm analysis.

On occasion, Indiana state courts have bypassed the irreparable harm analysis for certain ongoing and unlawful acts. *See L.E. Services, Inc. v. State Lottery Comm'n of Ind.*, 646 N.E.2d 334, 349 (Ind. Ct. App. 1995) (injunction affirmed against a lottery ticket business based on violations of state anti-gambling laws); *Cobblestone II Homeowners Ass'n, Inc. v. Baird*, 545 N.E.2d 1126, 1129-30 (Ind. Ct. App. 1989) (reversing injunction's denial, where party sought to access condominium deck, because irreparable harm need not be shown when act is declared unlawful by statute or against the public interest). Mr. Cartwright invites the court to forego irreparable harm analysis based on this state law.

The court adheres to the federal standard. Federal courts in diversity cases (or any case where state law supplies the rule of decision) must apply state "substantive" law but federal "procedural" law, *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 301-02 (7th Cir. 2010); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938), though that distinction has never been considered one so simple, *see Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Hanna v. Plumer*, 380 U.S. 460, 471 (1965); *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109-10 (1945). The court must apply federal procedural rules unless

7

they transgress the Enabling Act or the Constitution. *See Hanna*, 380 U.S. at 471; *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997). No showing has been made that Rule 65 or the federal standard governing preliminary injunctions does so. Applying the federal standard is neither tantamount to denying a state-created right nor outcome determinative; by its nature, an injunction under Rule 65 is preliminary only.[1]

Federal law provides the rubric for analysis of preliminary injunction requests, otherwise unaltered by state substantive law, except of course when analyzing the likelihood of success on the merits when the merits hinge on state statute or substantive law. *See Bedrossian*, 409 F.3d at 843 n.1; *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) (Gorsuch, J.); *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989); *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987); *see also* Wright & Miller, *Federal Practice and Procedure* § 2943 (2021); 17A *Moore's Federal Practice—Civil* § 124.05 (2021). State law might help determine whether irreparable harm has been shown, *see, e.g., Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1094 (7th Cir. 2008), *abrogated on other grounds*, *Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020); *Heil Trailer Int'l Co. v. Kula*, 542 F. Appx. 329, 335 (5th Cir. 2013), but never to justify dispensing with that federal requirement altogether. Indeed, our highest court has emphasized that it would be wrong to forego such an essential finding for injunctive relief. *See Sampson v. Murray*, 415 U.S. 61, 88 (1974). The court thus declines to pass over the requirement of irreparable harm at this preliminary injunction stage.

Bound to this standard, Mr. Cartwright argues that BANA's interference with his property rights is irreparable. There is something fundamental—indeed constitutional—about property rights, *see, e.g.*, U.S. Const. amends. V, XIV, though no state action here to trigger that issue and the irreparable

---

[1] This differs from a permanent injunction, which in diversity cases is governed by the forum state's choice-of-law rules. *See Tradesman Intern., Inc. v. Black*, 724 F.3d 1004, 1012 (7th Cir. 2013); *Panhandle E. Pipe Line Co. v. Plummer*, 2018 U.S. Dist. LEXIS 49933, 29-34 (S.D. Ind. Mar. 27, 2018) (case cited by Mr. Cartwright).

8

harm finding that could follow, *see, e.g., Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Instead, Mr. Cartwright returns to Indiana cases holding that interference with one's right to the present use of his property constitutes irreparable harm, but that is reserved to real property, not money or even assets in an identifiable account. *See Kosciusko Cnty. Community Fair, Inc. v. Clemens*, 116 N.E.3d 1131, 1137-38 (Ind. Ct. App. 2018) (county fair's violation of restrictive covenants with loud and noisy races that would interfere with homeowners' ability to enjoy and use their real property was irreparable harm); *Bowling v. Nicholson*, 51 N.E.3d 439, 444 (Ind. Ct. App. 2016) (nuisance claims between neighbors that obstruct the other's free use of his real property is irreparable harm); *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158, 167-68 (Ind. Ct. App. 2005) (continual trespass on one's real property is irreparable harm); *see also Plummer*, 2018 U.S. Dist. LEXIS 49933 at 29-34 (holding that refusal to honor another's real property rights was irreparable harm). Unlike these cases, Mr. Cartwright's dispute deals only with money; he isn't being denied the use of his real property. He hasn't shown irreparable harm.

Quite to the contrary, Mr. Cartwright retains the liberty to spend his money for his own subsistence and daily expenses. He can pay for his daily needs, so no irreparable harm exists on that basis. BANA hasn't locked down his account. He can likewise receive disbursements on the assets or sell assets to pay off any loan obligations he may have, quite aside from the sizeable distributions he receives from his parents' trusts. When the concern of elder abuse has been investigated and resolved, and a factfinder determines whether the bank has a good faith basis for refusing his instructions to transfers his assets to the judge or now to another bank, Mr. Cartwright will have the remedy of money to address any damages he might sustain in the meantime, including any tax liability, capital gains, or losses because the bank deprived him of his unfettered use or right to gift the assets freely.

Mr. Cartwright's motion thus falters for another reason: he has an adequate remedy at law. To be inadequate, a remedy needn't be "wholly ineffectual," but it must be "seriously deficient as

9

compared to the harm suffered." *Foodcomm Intern. v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). A damages award at the trial's conclusion, should Mr. Cartwright prevail, won't be deficient, let alone seriously deficient. Any monetary damages he may suffer are calculable and sufficient. He retains access to the trust's assets and money, just not for the purpose of relinquishing those to someone else. Because he has an adequate remedy at law, the court may not issue a preliminary injunction.

## CONCLUSION

Because Mr. Cartwright faces no irreparable harm and retains an adequate remedy at law, the court DENIES the motion for a preliminary injunction (ECF 44).

SO ORDERED.

June 25, 2021                           *s/ Damon R. Leichty*
                                                      Judge, United States District Court