UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BANK OF AMERICA, N.A.,

        Plaintiff,

v.

LEVERING RUSSELL CARTWRIGHT *et al.*,

        Defendants.

CAUSE NO. 3:21-CV-184 DRL-MGG
(consolidated cases 3:21-CV-191 and
3:21-CV-236)

OPINION & ORDER

Levering Russell Cartwright, an elderly man in assisted living, banks with Bank of America, N.A. (BANA). He befriended Judge Jason Cichowicz after using his services as a then-attorney in 2014. Their professional relationship ostensibly ended, but the two men grew closer over the years until Mr. Cartwright named Judge Cichowicz the primary beneficiary under his trust in 2015, reaffirmed in an amended trust in 2018. Mr. Cartwright remains estranged from his two adult children.

In 2020, Mr. Cartwright asked BANA to transfer all his trust assets to Judge Cichowicz, despite the seeming expenditure of approximately $450,000 a year (of which less than $180,000 was devoted to assisted living expenses). BANA suspected elder abuse, so it blocked the transfer under its Investment Services Agreement and later Mr. Cartwright's full access to the trust assets, except his access for daily living expenses.

This litigation ensued—now consolidating three actions. BANA pursues a declaratory judgment. The court declines and dismisses BANA's complaint, favoring the pending coercive action by Mr. Cartwright that, albeit whittled here through a partial dismissal, remains to address the issues of consequence among the parties. The Cartwright Foundation's complaint has become moot. All told, only the coercive action by Mr. Cartwright remains after today.

BACKGROUND

These facts emerge from the pleadings being challenged in the motions to dismiss, assumed true as the court must to decide the motions. Levering Russell Cartwright is 81 years old, resides in an assisted living facility, and is a customer of Bank of America (BANA). A wealthy man, he is the trustee of the Levering Russell Cartwright 1993-2 Trust (Cartwright Trust), a revocable trust that holds about $6.7 million in assets at last count. BANA is the custodian of the Cartwright Trust. The bank's obligations are outlined in an Investment Services Agreement (*see* ECF 21-1).

Mr. Cartwright hired Jason Cichowicz, then an attorney (now judge). They became friends, with Judge Cichowicz often visiting Mr. Cartwright to keep him company and helping him with daily needs. The relationship blossomed to where they now describe it as a father-son relationship. This description has special meaning: Mr. Cartwright is estranged from his adult children (Anne Russell Redhead and Charles Cartwright) and has no other close family. BANA harbors suspicions about this relationship and the potential for elder abuse.

Within one year of meeting Judge Cichowicz, Mr. Cartwright appointed him as co-trustee of the Cartwright Foundation, a private charitable foundation established by his father, which holds about $1.3 million in assets. Mr. Cartwright later resigned as a trustee, making Judge Cichowicz sole trustee. After Judge Cichowicz was elected as a judge in St. Joseph County, BANA says he used about $165,000 of the Cartwright Foundation's assets to improve the St. Joseph County Courthouse.

Mr. Cartwright conveyed by quitclaim deed a residence to himself and Judge Cichowicz, only to have Judge Cichowicz later convey his interest in the residence back to Mr. Cartwright by quitclaim deed. Judge Cichowicz prepared both quitclaim deeds. Later, Mr. Cartwright made Judge Cichowicz the co-owner of his personal checking account with rights of survivorship, and BANA believed the handwriting on the signature card (other than Mr. Cartwright's signature) was that of Judge Cichowicz. Mr. Cartwright's annual income from his parents' irrevocable trusts, about $450,000, is deposited into

this checking account. BANA alleges that most of this money is spent annually, though Mr. Cartwright's living expenses at the assisted living facility don't come close to this amount.

Mr. Cartwright restated the Cartwright Trust to make Judge Cichowicz the sole remainder beneficiary and successor trustee (ECF 21-2). He later restated the Cartwright Trust yet again to add Judge Cichowicz's wife and children as remainder beneficiaries (ECF 21-3). He named Judge Cichowicz attorney-in-fact over his assets, including power over the Cartwright Trust, a power of attorney that Judge Cichowicz prepared (ECF 21-4).

Judge Cichowicz regularly wrote checks on Mr. Cartwright's personal checking accounts and communicated with BANA about the Cartwright Trust assets and its cash distributions. Shortly after restating the Cartwright Trust the second time, Mr. Cartwright gifted Judge Cichowicz about $30,000 in stock from the Cartwright Trust. Though Mr. Cartwright signed the letter directing this stock gift, the return address on the letter was Judge Cichowicz's home address, according to BANA.

Later, Mr. Cartwright named Judge Cichowicz as the beneficiary of his Trusteed IRA, which holds about $357,000. He named Judge Cichowicz's spouse as the contingent beneficiary. The handwriting on the beneficiary designation form was, in BANA's opinion, that of Judge Cichowicz. BANA didn't seem to have any issues with Mr. Cartwright's and Judge Cichowicz's relationship up until then.

In 2020, BANA's view changed. Mr. Cartwright tried to transfer all his assets in the Cartwright Trust to Judge Cichowicz. Though BANA tried to dissuade him from doing so, he persisted in his request. Judge Cichowicz also communicated with BANA about Mr. Cartwright's request. Mr. Cartwright sent a direction letter and instructions to transfer all the Cartwright Trust's assets to Judge Cichowicz's personal investment account at another bank (ECF 21-5), though BANA doubted the direction letter's authenticity.

Underlying this request to transfer the Cartwright Trust assets was a shifting negotiation over proposed transactions involving Judge Cichowicz, Mr. Cartwright, and BANA. Much of this was the subject of an evidentiary hearing on a preliminary injunction request. At first, BANA explained that Mr. Cartwright's $1.7 million line of credit with the bank, secured by the trust assets, would need to be fully paid. Seven days later, Judge Cichowicz asked BANA for the account and payoff information, indicating that he planned to have Notre Dame Federal Credit Union (NDCU) wire money to pay the outstanding line of credit and that he wanted this done the next business day.

Judge Cichowicz took Mr. Cartwright to NDCU. NDCU extended a loan to Mr. Cartwright and the 1993-2 Trust as co-borrowers. Judge Cichowicz used the NDCU loan proceeds to pay BANA's line of credit. NDCU secured its $1.7 million loan with the trust assets. On December 20, 2020, Mr. Cartwright signed a written directive to BANA to transfer all trust assets to an account at NDCU, but only in Judge Cichowicz's name, not in Mr. Cartwright's name. Eight days later, and after multiple inquiries from Judge Cichowicz, BANA explained that the transfer was under legal review.

On January 7, 2021, BANA declined the transfer because it believed Judge Cichowicz may be financially exploiting Mr. Cartwright. Under its Investment Services Agreement, BANA "is not required to act on any instructions when the Bank in good faith doubts the validity or meaning of such instructions." In addition, under this agreement, BANA "is not required to comply with any direction which the Bank believes may subject [it or an affiliate] to liability or expense, or to commence or defend any action, unless the Bank consents to, and is indemnified in a manner and amount satisfactory to the Bank."

BANA filed the first lawsuit (3:21-cv-184) seeking a declaratory judgment on its rights and obligations vis-à-vis Mr. Cartwright on March 12, 2021. Frustrated in his then-current course, Mr. Cartwright changed course. He told the bank that he terminated Judge Cichowicz's power of attorney and requested that the bank terminate the judge's authority over his accounts on March 15, 2021. On

March 26, 2021, he then directed BANA to close all his accounts so he could transfer them to a new bank. BANA again declined, saying it retained concerns over elder financial abuse.

Mr. Cartwright sued BANA and two of its employees with a garden-variety list of claims for the bank's refusal to allow Mr. Cartwright to withdraw his own funds (3:21-cv-191). A few days later, the Cartwright Foundation (through its trustee, Judge Cichowicz) sued BANA for its refusal to transfer the Cartwright Foundation's assets to another institution, as directed by Judge Cichowicz (3:21-cv-236). Because the suits all involved the same subject matter, they were consolidated.

The court denied a preliminary injunction. A number of motions still pend. Both Judge Cichowicz and Mr. Cartwright moved to dismiss BANA's declaratory judgment request. BANA moved to dismiss both Mr. Cartwright's second amended complaint and the Cartwright Foundation's amended complaint. Mr. Cartwright moved to dismiss the amended crossclaims of Anne Russell Redhead and Charles Cartwright. This order resolves these and other related motions.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the nonmovant's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court must use the same "plausibility" standard: the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing the jurisdictional requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

DISCUSSION

A.   *The Court Dismisses BANA's Declaratory Judgment Claims and Anne Russell Redhead's and Charles Cartwright's Amended Crossclaims.*

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). That the court may hear a declaratory suit doesn't mean it must. *See Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010); *Ray v. Bedi Trust*, __ F. Supp.3d __, 2020 U.S. Dist. LEXIS 42541, 16-17 (N.D. Ind. 2020). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

A declaratory suit must address an "actual controversy." 28 U.S.C. § 2201(a). An "actual controversy" mirrors the "Cases" and "Controversies" justiciable under the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *Amling v. Harrow Industries LLC*, 943 F.3d 373, 377 (7th Cir. 2019). A dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests;" "real and substantial;" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549

6

U.S. at 127; *see Aetna*, 300 U.S. at 240-41; *Amling*, 943 F.3d at 377. This requirement is met when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Cent. States, S.E. & S.W. Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 451 (7th Cir. 2016) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Mr. Cartwright and Judge Cichowicz contend that BANA hasn't established an actual controversy—quite hard to envision at first blush given the pleadings and injunction request already. BANA's declaratory suit addresses four defendants: Levering Russell Cartwright, Judge Cichowicz, Anne Russell Redhead, and Charles Cartwright. BANA requests (1) guidance on its obligations to transfer the trust assets to Judge Cichowicz; (2) guidance on its obligations to transfer all of Mr. Cartwright's assets to another financial institution; (3) appointment of a legal representative for Mr. Cartwright to handle his financial accounts, including his personal assets, the Cartwright Trust, his parents' irrevocable trusts, and the Cartwright Foundation; (4) discharge from any liability to the defendants; (5) attorney fees; and (6) other relief the court finds just and proper.

The court first assesses whether each declaratory judgment defendant has standing for a claim against the declaratory judgment plaintiff; if not, there is no actual controversy. *See, e.g.*, *Sloan Valve Co. v. Zurn Indus., Inc.*, 712 F. Supp.2d 743, 750 (N.D. Ill. 2010) (St. Eve, J.); *Berger v. Ohio Table Pad Co.*, 539 F. Supp.2d 1069, 1090 (N.D. Ind. 2008); *see also Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990). To have standing absent statutory authority, a party must show that it has a "personal stake in the outcome of the controversy." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972).

Lack of standing disposes of Mr. Cartwright's adult children, Anne Redhead and Charles Cartwright. Neither has a personal stake in BANA's dispute over the Cartwright Trust assets, so there isn't an actual controversy involving them. The dispute centers on the trust's assets at BANA, not

theirs. Neither child is Mr. Cartwright's legal representative or that trust's beneficiary. BANA's Investment Services Agreement is with the Cartwright Trust (ECF 21-1), not them. They were disinherited from Mr. Cartwright's trust (ECF 21-3 at 2), so they no longer have standing as beneficiaries. *Cf. Huff v. Huff*, 892 N.E.2d 1241, 1247 n.6 (Ind. Ct. App. 2008) (beneficiaries have "a fixed and vested property right to distribution of the trust principal") (citation omitted).

The court pauses here to address BANA's argument that these adult children are presumptive remainder beneficiaries of Mr. Cartwright's parents' irrevocable trusts. The children echo this same argument in defending their crossclaims against dismissal (ECF 86). For its part, BANA points to no duties it owes the children. For the children's part, they merely argue that, were Mr. Cartwright to transfer his trust's assets, he necessarily will seek distributions of the principal from the irrevocable trusts to pay for his support or care; and, in turn, that would reduce their interests in these irrevocable trusts established by their grandparents.

In short, Mr. Cartwright's children have experienced no harm today though they speculatively might in the future—thus they have no standing. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Otherwise stated, the children have an attenuated worry about what may happen but have not presented a substantial and present controversy today—thus again they have no standing. *See MedImmune*, 549 U.S. at 127; *Klaassen v. Trs. of Ind. Univ.*, 2021 U.S. Dist. LEXIS 133300, 37 (N.D. Ind. Jul. 18, 2021) ("The court isn't a law office established for legal advice—the federal judiciary decides cases, not hypothetical outcomes."); *Ray*, 2020 U.S. Dist. LEXIS 42541 at 30 ("The Declaratory Judgment Act is not meant to keep the court 'on retainer' to answer questions that may hypothetically come up."). The court's decision won't redress any alleged future injury these children envision, *see Uzuegbunam*, 141 S. Ct. at 797; *Spokeo*, 136 S. Ct. at 1547, so the court won't entertain a declaratory suit against them and must dismiss their crossclaims.

Unlike the children, Mr. Cartwright has standing to sue. Indeed, he has done so for BANA's alleged misconduct. BANA today possesses and restricts his trust's assets. BANA and the Cartwright Trust entered into an Investment Services Agreement, with Mr. Cartwright as trustee and as a depository account holder, so he has standing to sue for the agreement's breach.

Judge Cichowicz doesn't have standing. He is the trustee of the Cartwright Foundation, so he would have standing to sue on behalf of the Cartwright Foundation regarding its assets, *see* Ind. Code § 30-4-3-3(a)(11), but the Foundation's claims have become moot. Nothing demonstrates that he would have standing to sue in his individual capacity vis-à-vis the Cartwright Trust (as he is named in the bank's declaratory judgment action). The court sees no clear avenue for Judge Cichowicz to assert third-party standing. *See Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir. 1996). Judge Cichowicz isn't a party to the Investment Services Agreement. BANA and Judge Cichowicz aren't engaged in an adviser-client relationship as it pertains to the Cartwright Trust. *See SEC v. Nutmeg Grp., LLC*, 162 F. Supp.3d 754, 778 (N.D. Ill. 2016). Judge Cichowicz isn't a beneficiary of the trust during the lifetime of Mr. Cartwright, who, according to the trust, is the "sole and exclusive" recipient of its benefits today (ECF 21-3). Therefore, even Mr. Cartwright, as the trustee and settlor of the trust, owes no fiduciary duty to Judge Cichowicz. *See Fulp v. Gilliland*, 998 N.E.2d 204, 207-08 (Ind. 2013) (settlor of revocable trust owes no fiduciary duty, as trustee, to remainder beneficiaries).

The court turns next to each declaratory request. BANA first requests guidance on whether to transfer the Cartwright Trust assets to Judge Cichowicz. This issue is moot. An issue is moot "when a court's decision can no longer affect the rights of litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical state of facts.'" *H.P. ex rel. W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (quoting *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006)). This issue became moot when Mr. Cartwright withdrew this request. To say now whether BANA should have transferred the assets would require

opining on a hypothetical state of facts. No party hints that Mr. Cartwright might renew his request in the future, so this doesn't fall under the "capable of repetition" but "evad[ing] judicial review" exception to the mootness doctrine. *See Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016).

BANA curiously argues that allowing Mr. Cartwright to transfer all accounts to another financial institution—as Mr. Cartwright now wants to do—would be an indirect transfer of the Cartwright Trust assets to Judge Cichowicz, because that is ultimately where Mr. Cartwright wants the assets (ECF 41 at 11-12). But its interpretation of "transfer" has no basis in authority or in the word's plain meaning. It cannot be said that BANA's transfer of Mr. Cartwright's assets to another institution, followed by Mr. Cartwright's independent transfer of those assets to Judge Cichowicz, is somehow BANA transferring those assets to Judge Cichowicz, particularly when that receiving financial institution would have the same obligations under which BANA now claims to operate. The issue over whether BANA should transfer Mr. Cartwright's assets to Judge Cichowicz is moot.

BANA next requests guidance on its obligation to transfer Mr. Cartwright's assets to another institution. Though an actual controversy, this issue has ripened into a coercive lawsuit filed by Mr. Cartwright, individually and as trustee for the Cartwright Trust. Courts commonly issue declaratory judgments to settle legitimately disputed contractual relationships before a breach occurs. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) ("The judgment would serve the useful purpose of settling the contractual relationships."); *Johnson v. McCuskey*, 72 F. Appx. 475, 477 (7th Cir. 2003) ("a party may seek a declaratory judgment to determine whether a particular contract term is binding and need not risk breaching the contract and await a suit"); *see, e.g., Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 381-82 (7th Cir. 2010). Mr. Cartwright claims a breach has occurred already.

BANA points to two contractual provisions in the Investment Services Agreement justifying its refusal to let him withdraw the funds: first, the provision saying "[t]he Bank is not required to act

on any instructions when the Bank in good faith doubts the validity or meaning of such instructions" (ECF 21-1 at 23); and second, the provision saying "[t]he Bank is not required to comply with any direction which the Bank believes may subject the Bank or any Bank Affiliate to liability or expense" (ECF 21-1 at 23).[1] BANA says it had good faith doubts about the validity of Mr. Cartwright's instructions because they may be the result of Judge Cichowicz's undue influence.

There was a real and substantial dispute regarding these legal obligations when BANA sued, and still is. Mr. Cartwright sued soon thereafter saying BANA breached its obligations, signifying just how "real" and "substantial" BANA's suit is. *See MedImmune*, 549 U.S. at 127. The court may consider this second request for declaratory relief—though it still must decide whether to do so within the context of a declaratory judgment complaint or the coercive action.

Before turning to that subject, the court evaluates the bank's third request for guidance. BANA requests appointment of a legal representative for Mr. Cartwright. This is a mixed bag. BANA seeks declaratory judgment for an issue involving the Cartwright Foundation, but the Cartwright Foundation hasn't been named or served in the declaratory judgment suit. Nor does the dispute here concern Mr. Cartwright's parents' trust: he requests that he be able to move his accounts to another institution, but his parents' trusts are not his accounts at BANA. Instead, funds from the parents' trusts get deposited at set intervals into his BANA account. A declaration in these guises is inappropriate.

And in truth, the lingering portion of this request isn't about guidance—a declaration under the Declaratory Judgment Act—but about an appointment of a legal guardian. The court's authority to appoint a legal guardian for Mr. Cartwright over the trust's assets remains a mystery, whether generally or under the Declaratory Judgment Act. BANA doesn't point to any authority.

---

[1] The bank also points to an Indiana statute that says it may refuse a request to disburse funds from an account owned by a financially vulnerable adult, including Mr. Cartwright, if it "has reason to believe that the requested disbursement may result in financial exploitation of the financially vulnerable adult." Ind. Code § 23-19-4.1-7(a); *see also* Ind. Code § 23-19-4.1-2.1 (defining "financially vulnerable adult"); Ind. Code § 23-19-4.1-5 (defining "qualified individual").

BANA next requests that the court discharge the bank from any liability. This blanket request for indemnification isn't ripe. No matter the provisions within the Investment Services Agreement, disputes over indemnification generally aren't ripe until the indemnified party has been called upon to pay. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 537-38 (7th Cir. 2006); *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). That won't be determined until the coercive action's resolution. *See Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181 (7th Cir. 2020) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). Likewise, the requests for attorney fees and other relief are just requests for future relief, not ripe issues appropriate to declaration.

In short, the only issue appropriate for declaration concerns interpretation of the Investment Services Agreement. In deciding whether to issue a declaration, the court remains mindful of the Declaratory Judgment Act's purpose. A declaration should "clarify and settle the legal relations at issue" and "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (citation omitted). This act contemplates two scenarios: when "(1) [t]he controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) [a]lthough the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision." *Id.* Though this suit once fulfilled both scenarios, it no longer does: a coercive action has been filed.

The court considers these factors to decide whether it should still hear the declaratory suit: "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata*'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and (5) whether there is an alternative

remedy that is better or more effective." *NUCOR Corp.*, 28 F.3d at 579 (citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991)). Analysis of the factors favors dismissal of the declaratory suit here in favor of the coercive action.

The declaratory judgment complaint is unnecessarily duplicative of the coercive action. *See AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. 2004) ("Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified."); *DigiTrax Ent., LLC v. Universal Music Corp.*, 21 F. Supp.3d 917, 923 (E.D. Tenn. 2014) (same). Indeed, now that Mr. Cartwright's children are dismissed, the declaratory suit is effectively the flip side of the coin of the coercive suit. Hearing a duplicative suit wouldn't be a wise use of judicial resources. BANA has provided no reason to believe that its requests couldn't be addressed in the coercive suit. Indeed, the coercive suit will "help sharpen and refine the issues to be decided" for this case. *Albie's Foods, Inc. v. Menusaver, Inc.*, 170 F. Supp.2d 736, 740 (E.D. Mich. 2001). The court thus dismisses BANA's declaratory judgment action.

B.       *BANA's Motion to Dismiss Levering Russell Cartwright's Second Amended Complaint.*

Mr. Cartwright, individually and in his capacity as trustee, filed the coercive suit against BANA. The court afforded him the opportunity to amend to winnow the panoply of claims that seemed overstated or inapplicable, but little came from that opportunity. A kitchen-sink approach to pleadings merely means that it will take longer for the court to rule when a motion to dismiss comes—as one did here.

1.       *Count Two—Criminal Deception.*

Mr. Cartwright withdrew his replevin claim in count one, so the court turns to the criminal deception claim in count two to begin. He pursues this theory through the Indiana Crime Victim's Relief Act (CVRA). Ind. Code § 34-24-3-1; *see Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 333-34

(Ind. 2013). This claim cannot be predicated on a contract breach, only an independent tort. *State Group Industrial (USA) Ltd. v. Murphy & Assocs. Indus. Servs., Inc.*, 878 N.E.2d 475, 480 (Ind. Ct. App. 2007).

Statutory deception occurs when a person either "knowingly or intentionally makes a false or misleading written statement with intent to obtain property," or "misapplies entrusted property . . . in a manner that [he] knows involves substantial risk of loss or detriment to either the owner of the property or to a person for whose benefit the property was entrusted." Ind. Code § 35-43-5-3(a)[2]; *Longhi v. Mazzoni*, 914 N.E.2d 834, 844 (Ind. Ct. App. 2009). Mr. Cartwright pursues both theories.

This first theory stumbles on heightened pleading requirements. *See LeSEA, Inc. v. LeSEA Broad. Corp.*, 379 F. Supp.3d 732, 738-39 (N.D. Ind. 2019). Though generally pleadings need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), averments of fraud "must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b); *see, e.g.*, *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (rule applies to "averments of fraud, not claims of fraud"). A claimant must allege "the who, what, when, where, and how" of fraud-based claims. *Borsellino*, 477 F.3d at 507; *see Troth v. Warfield*, 495 F. Supp.3d 729, 739 (N.D. Ind. 2020).

Mr. Cartwright vaguely alleges that the defendants made false written statements (*see, e.g.*, ECF 42 ¶ 131). Such a non-descript allegation isn't enough. Mr. Cartwright later refers to a bank representative's email from December 18, 2020 (*id.* ¶ 167). This email said "[he] was working with [BANA] staff to request the payoff amount for the line of credit." The complaint never alleges this statement was false. Nor does it show how it was meaningfully misleading at the time the bank employee made it.

---

[2] This law was repealed effective July 1, 2021, *see* P.L. 174-2021, § 45 (effective July 1, 2021), but proceedings begun before that effective date may continue and be enforced under prior law, *see* Ind. Code § 1-1-5.5-23(a).

As to the second theory, Mr. Cartwright pleads that BANA misapplied his entrusted property by refusing him control and access over his accounts and assets. This allegation spans a lengthy period—going from when Mr. Cartwright first requested the trust's asset transfer to today. Taking his allegations as true, he claims the bank and its representatives (Messrs. Fantasia and Heaver) misapplied his identifiable assets at substantial risk of loss, assuming as true his voiced concerns about imminent tax changes.[3] He may proceed on this latter theory.

2.    *Count Three—Negligence.*

In his second amended complaint, Mr. Cartwright says BANA and its two representatives negligently breached their duties to him. Mr. Cartwright contracted this claim away, and the economic loss doctrine otherwise bars it.

The Investment Services Agreement says BANA "is only liable for any loss, reduction in value or income directly caused by its *gross negligence* or *willful misconduct*" (ECF 19-1 at 33 (emphasis added)). The parties explicitly contracted away BANA's liability for ordinary negligence. *See N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465-66 (Ind. 2003). There are no allegations in the complaint challenging the contract's validity. Indeed, Mr. Cartwright was a Harvard-educated attorney when he signed the contract, so this provision cannot be said to be the product of unconscionable disparity in bargaining power. *See McAdams v. Foxcliff Ests. Cmty. Ass'n, Inc.*, 92 N.E.3d 1144, 1150 (Ind. Ct. App. 2018). The court honors this freely-bargained plain language and dismisses the negligence claim.

The economic loss doctrine would work the same result. *See Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 736 (Ind. 2010); *Greg Allen Constr. Co., Inc. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003); *Lake Ridge New Tech. Schs. v. Bank of New York Mellon, Trust*

---

[3] BANA disputes this allegation in its response, saying Mr. Cartwright has access to his money, though it refuses to transfer the trust assets to Judge Cichowicz. In doing so, it points to a January 8, 2021 letter. This argument for the letter's consideration is improper at the motion to dismiss stage, as the court looks only to the pleadings. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

*Co., N.A.*, 353 F. Supp.3d 745, 759 (N.D. Ind. 2018); *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 785 (7th Cir. 2015) (applying Indiana law). Because a commercial contract exists between the parties, it generally governs over any claims for negligence. The loss he alleges is purely economic. The only way he can get out of the economic loss bar is to establish an exception. His best candidate is breach of a duty of care owed to him by a fiduciary, *see Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 736, but such a theory is covered elsewhere in his second amended complaint. Its duplication here is unnecessary. Any other exception is left unsupported by anything more than vague or conclusory allegations that won't suffice at this stage. *See Iqbal*, 556 U.S. at 681.

Absent these two bars, Mr. Cartwright cannot allege negligence based on violations of Financial Industry Regulatory Authority (FINRA) rules. FINRA rules don't apply to BANA, nor create a private right of action here. Mr. Cartwright acknowledges this. *See, e.g.*, *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 649 (7th Cir. 2014); *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 912 (8th Cir. 2010). And Mr. Cartwright can't circumvent this law by disguising his FINRA claim as a negligence claim. *See, e.g.*, *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp.3d 634, 645-46 (S.D.N.Y. 2020). The court dismisses the negligence claim.

### 3.    *Count Four—Fraud and Constructive Fraud.*

In Indiana, common law fraud requires a showing that a defendant made a material misrepresentation of past or existing fact, which can include an omission when the law imposes a duty to speak. *Kesling*, 997 N.E.2d at 335. Constructive fraud also requires a showing of "the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists[.]" *Kreighbaum v. First Nat. Bank & Trust*, 776 N.E.2d 413, 421 (Ind. Ct. App. 2002). The "fraud must relate to a present or pre-existing fact and it cannot be predicated upon matters of futurity or promises to be performed at some later time." *Peoples Trust Bank v. Braun*, 443 N.E.2d 875, 877-78

(Ind. Ct. App. 1983); *see Oyebade v. Boston Sci. Corp.*, 955 F. Supp.2d 920, 945 (S.D. Ind. 2013). The heightened pleading standard of Rule 9(b) applies.

On its face, the second amended complaint remains devoid of the particulars of fraud or constructive fraud. The briefing from Mr. Cartwright is likewise littered with generalities and conclusions, but no specifics about the representations or omissions that would support such claims. Mr. Cartwright just broadly alleges that BANA and its representatives made material misrepresentations.

Paragraphs 96-99 and 163 of Mr. Cartwright's second amended complaint describe statements or omissions one bank representative allegedly made in October 2020 about Mr. Cartwright's ability to transfer trust assets if he paid off a loan secured by these assets. Such statements relate only to future conduct, not current or preexisting fact that would be actionable under Indiana law. *See Peoples Trust Bank*, 443 N.E. at 877-78; *see Oyebade*, 955 F. Supp.2d at 945.

Mr. Cartwright says *Schwartz v. Oberweis*, 826 F. Supp.280 (N.D. Ind. 1993), is "almost directly on point" for the proposition that he has adequately stated claims for common law fraud and constructive fraud. Not even close. In *Schwartz*, the plaintiff adequately pleaded "specific misstatements or omissions of past or current fact," *id.* at 288, whereas here not so. In *Schwartz*, the plaintiff also alleged specific details—the date of the events, the manner of the false statements, the place of the misrepresentations and omissions, and the fact that the defendant personally made the representations—but again not so here. *Id.* Having had multiple opportunities to provide such detail, the court dismisses these claims.

        4.     *Count Five—Breach of Contract.*

This is the central claim. Mr. Cartwright says BANA breached its contract. The propriety of other claims—including negligence, unjust enrichment, breach of fiduciary duties—are affected by this contract, and rightfully so. Contracting parties "have the right to define their mutual rights and

obligations, and a court may not make a new contract for the parties or supply missing terms under the guise of construing a contract." *Perrill v. Perrill*, 126 N.E.3d 834, 840 (Ind. Ct. App. 2019) (citation omitted). To state a contract claim, he must plead that (1) a contract existed, (2) the bank breached the contract, and (3) he suffered damage because of its breach. *Morris v. Crain*, 71 N.E.3d 871, 880 n.5 (Ind. Ct. App. 2017) (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)).

The bank's motion makes the soft pitch that Mr. Cartwright hasn't identified the precise contract terms that undergird his allegation that the bank failed to perform proper services, improperly retained control over his assets, or charged excessive fees. There is little mystery to the key contractual provisions, and any additional edification can be procured in discovery. Mr. Cartwright pleads a contract's existence—the Investment Services Agreement—that he attaches to his second amended complaint. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (court may consider documents attached to complaint). His theories of breach include adequate detail for pleading purposes. He has plausibly stated this claim, so the court denies the motion to dismiss here.[4]

5.     *Count Six—Breach of Fiduciary Duty.*

Mr. Cartwright says BANA breached its fiduciary duties to him, including the duties of good faith and failure to act in his best interest. Indiana excepts fiduciary breaches from the economic loss doctrine. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 736. To establish this claim, he must show "(1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Aaron MacGregor & Associates, LLC v. Zhejiang Jinfei Kaida Wheels Co., Ltd.*, 328 F. Supp.3d 906, 927 (N.D. Ind. 2018).

The bank never argues that Mr. Cartwright cannot meet these requirements as a matter of law. Indeed, the bank seemed to recognize some measure of fiduciary obligation during the recent

---

[4] To the extent that Indiana law glosses the contract with a duty of good faith or fair dealing, *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998), or the contract memorializes one, that issue survives the motion to dismiss, just not as a negligence theory.

preliminary injunction proceeding. An investment services provider—like BANA—has fiduciary duties, including acting in their client's best interest, taking reasonable care to avoid misleading clients, and fully and frankly disclosing material facts, *see Nutmeg Grp.*, 162 F. Supp.3d at 778 (citing cases), quite aside from the contractual obligation to act in Mr. Cartwright's best interest, *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 749-50 (Ind. 2010). This is in addition to any other fiduciary duties state law may impose on the bank. The court disagrees with BANA's argument that the second amended complaint lacks sufficient facts to understand the nature of these duties or their breach. This claim survives the motion to dismiss.

6.     *Count Seven—Unjust Enrichment.*

The express contract forecloses an unjust enrichment claim. Unjust enrichment permits recovery "where the circumstances are such that under the law of natural and immutable justice there should be a recovery." *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009). To prevail on this claim, the plaintiff "must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Coppolillo v. Cort*, 947 N.E.2d 994, 997 (Ind. Ct. App. 2011). Generally, an express contract between parties precludes a claim for unjust enrichment, though there is an exception when a contract "does not fully address a subject." *Id.* at 998.

A contract exists between the parties here. It is extensive. It speaks to the parties' financial agreements: the parties agreed "to pay the Bank for its services in the amounts as set forth in the Bank's schedule of fees and expenses for this type of Account in effect at the time services are rendered" (ECF 42, Ex. A at 19-20). Mr. Cartwright has provided no evidence that the parties had additional agreements outside of those enumerated in the contract or that the contract fails to cover an issue in dispute. The court dismisses this claim.

7.    *Count Eight—Conversion.*

Conversion has two elements: first, "the claimant must prove that the control exercised over the property was unauthorized;" and second, "the claimant must show that the accused was aware of a high probability that this control was unauthorized." *Manzon v. Stant Corp.*, 138 F. Supp.2d 1110, 1115 (S.D. Ind. 2001) (internal quotation marks omitted). This claim can be asserted as either civil conversion or as civil recovery for criminal conversion under the CVRA. *See McKeighen v. Daviess Cnty. Fair Bd.*, 918 N.E.2d 717, 723-24 (Ind. Ct. App. 2009).

Mr. Cartwright has plausibly pleaded that the bank exercised unauthorized control over his property during the period when it refused to allow him full enjoyment of the property; and, whether the likelihood of showing the bank was aware of a "high probability" that the control was unauthorized is low or not, Mr. Cartwright has plausibly stated a claim here.[5] The conversion claim remains.

8.    *Count 9—Indiana Senior Consumer Protection Law.*

The Indiana Senior Consumer Protection Act says a "person commits financial exploitation of a senior consumer when the person knowingly and by deception or intimidation obtains control over the property of a senior consumer or illegally uses the assets or resources of a senior consumer." Ind. Code § 24.4.6-6-4(a). There is a private right of action under this statute. Ind. Code § 24-4.6-6-5(a). The statutory scheme reveals that "by deception or intimidation" only modifies how the offender obtains control over a senior's property, not the manner of the illegal use. *See* Ind. Code §§ 24-4.6-6-4(a-b), 24-4.6-6-5(c). In short, the bank could violate this statute without deception or intimidation, so any failure of particularized allegations under Rule 9(b) isn't dispositive. *See Borsellino*, 477 F.3d at 507. Mr. Cartwright has plausibly pleaded that BANA illegally used the assets. No one has argued that merely because these assets are held in trust, a revocable one mind you, that the assets weren't

---

[5] BANA again points to the January 8, 2021 letter as a merits-based defense, but that won't fly at this stage because that is a matter outside the pleadings. *See Gen. Elec. Cap. Corp.*, 128 F.3d at 1080.

effectively those of a statutorily-defined senior consumer. The court thus denies the motion to dismiss this claim.

        C.        *The Court Dismisses the Cartwright Foundation's Amended Complaint.*

The Cartwright Foundation initially sued because BANA refused to transfer its assets to another institution. BANA moved to dismiss the foundation's amended complaint. BANA later reported that it transferred these assets, and the Cartwright Foundation filed a notice indicating it will dismiss its lawsuit without prejudice, leaving only its request for attorney fees. The court denies BANA's motion to dismiss as moot and dismisses this amended complaint without prejudice under Rule 41(a)(1)(A)(i).

        D.        *The Court Denies BANA's Motion to Seal.*

BANA moved to seal its response and the attached exhibits to Mr. Cartwright's emergency motion for injunctive relief. BANA says the response and exhibits contained sensitive information regarding Mr. Cartwright and Judge Cichowicz. However, certain information—like Mr. Cartwright's account number, social security number, and taxpayer ID number—was redacted from the exhibits. BANA cites no legal authority for sealing these documents. Neither Mr. Cartwright nor Judge Cichowicz request a seal. Accordingly, the court denies this motion, with leave to refile it within seven days if the parties believe anything within the response and exhibits should remain confidential.

CONCLUSION

For the reasons stated in this order, the court GRANTS Levering Russell Cartwright's (ECF 27) and Judge Jason Cichowicz's (ECF 25) motions to dismiss the declaratory suit (case no. 3:21-CV-184). The court DENIES Mr. Cartwright's motion for oral argument (ECF 29) as unnecessary.

The court GRANTS and DENIES IN PART the bank's motion to dismiss Mr. Cartwright's second amended complaint (ECF 49); DENIES AS MOOT the bank's motion to dismiss the Cartwright Foundation's amended complaint (ECF 47); DISMISSES WITHOUT PREJUDICE

Cartwright Foundation's amended complaint (ECF 39) pursuant to Rule 41; DENIES the bank's motion to seal (ECF 51) with leave to refile and ORDERS the clerk to make the response publicly available on September 10, 2021 if no motion to seal is received by September 9, 2021; DENIES AS MOOT the motion to dismiss the original crossclaim given the amended crossclaim (ECF 60); DENIES AS MOOT Charles Cartwright's and Anne Russell Redhead's motion (ECF 73) to deem the prior motion to dismiss as moot, not least because of their lack of standing; and GRANTS Mr. Cartwright's motion to dismiss the amended crossclaims of Charles Cartwright and Anne Russell Redhead (ECF 75).

The court DIRECTS the clerk to keep this case docket open because it remains the lead case in the consolidated action. The court ORDERS that the parties continue filing all future filings for the consolidated action on this docket. This order terms the Cartwright Foundation, Jason Cichowicz, Anne Russell Redhead, and Charles Cartwright as parties.

SO ORDERED.

September 1, 2021                          *s/ Damon R. Leichty*
                                          Judge, United States District Court