UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BANK OF AMERICA, N.A.,

  Plaintiff,

v.  CAUSE NO. 3:21-CV-184 DRL-MGG
  (consolidated cases 3:21-CV-191 and
  3:21-CV-236)

LEVERING RUSSELL CARTWRIGHT *et al.*,

  Defendants.

OPINION & ORDER

When this suit commenced, Bank of America, N.A. (BANA) was the custodian of the Levering Russell Cartwright Trust 1993-2. Levering Russell Cartwright was the settlor and trustee. When Mr. Cartwright requested a transfer of trust assets in a manner that concerned BANA, the bank blocked the transfer under its Investment Services Agreement and sought a declaratory judgment.

After consolidating BANA's action and a separate suit filed by Mr. Cartwright,[1] the court dismissed BANA's claims and retained some of Mr. Cartwright's claims. Needing then to answer the coercive action, BANA did so and counterclaimed for attorney fees under its Investment Services Agreement because it once sought instructions from the court on handling the trust funds. Mr. Cartwright asks the court to dismiss the counterclaim. The court denies this motion.

BACKGROUND

These facts emerge from the well-pleaded factual allegations in the counterclaim because Mr. Cartwright filed his motion under Federal Rule of Civil Procedure 12(b)(6). The court must accept these allegations as true for purposes of deciding the motion today.

---

[1] The court also consolidated a third case unrelated to the present motion. This third case was terminated on September 1, 2021 (Cause No. 3:21-CV-236).

BANA is the custodian of the Levering Russell Cartwright Trust 1993-2 (Cartwright Trust). Mr. Cartwright is the settlor and trustee of the Cartwright Trust. BANA's duties to the Cartwright Trust are outlined in the Investment Services Agreement. Section VI.H of this agreement provides that BANA may recover its attorney fees when the bank seeks instructions from a court because the bank believes "there is a dispute over the control" of an account.

As alleged, on December 11, 2020, during a phone call with BANA, Mr. Cartwright expressed his intent to gift assets of the Cartwright Trust to Judge Jason Cichowicz. Judge Cichowicz had grown close to Mr. Cartwright over several years, and Mr. Cartwright had allowed him to benefit from and manage much of Mr. Cartwright's assets. BANA encouraged Mr. Cartwright (an elderly man) not to transfer the trust assets, as the trust provided for his living expenses. BANA also advised Mr. Cartwright that there could be changes in the tax laws and that Mr. Cartwright had to pay off a loan secured by the trust assets before he could gift assets to Judge Cichowicz.

On December 20, 2020, BANA received a transfer request from another banking institution after that credit union paid off the loan amount. Although Mr. Cartwright requested that BANA transfer the assets before January 1, 2021, BANA declined. Instead, on March 12, 2021, BANA filed suit asking the court for declaratory relief and instructions on its duty to transfer the Cartwright Trust assets due to the bank's concerns about elder abuse. Mr. Cartwright then sued BANA for damages and a mandatory injunction for BANA's alleged bad faith and mismanagement of the trust.

On September 1, 2021, the court dismissed all of BANA's claims and some of Mr. Cartwright's claims, finding that the bank's declaratory judgment action was unnecessarily duplicative of Mr. Cartwright's coercive action. On January 7, 2022, BANA answered Mr. Cartwright's complaint and counterclaimed for attorney fees under the Investment Services Agreement. Today's motion concerns only this counterclaim.

2

STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted). In conducting this inquiry, the court may "consider documents incorporated by reference in the pleadings." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

DISCUSSION

As a federal court sitting in diversity, the court honors a choice-of-law clause unless it would contravene public policy. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015). The Investment Services Agreement says Indiana law applies (because the account was principally administered here). The parties cite Indiana law. The court sees no reason to depart. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996).

Indiana follows the American rule for attorney fees: each party must pay its own fees absent statutory or contractual allowance. *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 816 (Ind. 2012); *Osler Inst., Inc. v. Forde*, 386 F.3d 816, 818 (7th Cir. 2004). The court will enforce a contractual

3

fee-shifting clause unless it violates public policy, *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008), albeit limiting recovery only to those fees expressly allowed by the contract and no more, *see Chi. Southshore & S. Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 634 (Ind. Ct. App. 1995).

A contract's interpretation is generally a question of law, *Song v. Iatarola*, 76 N.E.3d 926, 933 (Ind. Ct. App. 2017), controlled by the parties' intent as expressed by clear contractual language, *City of Jeffersonville v. Env't Mgmt. Corp.*, 954 N.E.2d 1000, 1008 (Ind. Ct. App. 2011). "[W]hen the terms of a contract are drafted in clear and unambiguous language, [the court] will apply the plain and ordinary meaning of that language and enforce the contract according to [its] terms." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). The court won't rewrite it. *See id.*

The court thus starts with the contractual provision (Section VI.H) today:

> If the Bank believes there is a dispute over the control or ownership of the Account Assets or the Account, the Bank may without liability suspend or terminate any actions under this Agreement until such disputes are resolved to the Bank's satisfaction. The Bank may petition any court for instructions or other relief at the expense of the Account and the Owner, including the Bank's attorney's fees and expenses.

No one argues an ambiguity that would introduce extrinsic evidence or factual disputes. *See Song*, 76 N.E.3d at 933. Per this provision's plain language, it applies when BANA petitions a court for instructions believing that the control or ownership of an account or its assets is in dispute.

No one genuinely contests that BANA sought in its opening complaint instructions from the court about the trust's control or ownership. Instead, Mr. Cartwright argues that BANA doesn't have a contractual right to attorney fees because his claim today concerns something other than ownership or control of the trust account, so the general provision requiring each party to pay its attorney fees in Section XII should apply.[2] BANA counters that the litigation has been and remains a dispute over the control of the Cartwright Trust.

---

[2] "In the event a legal action is commenced in connection with this Agreement, each side will bear its own costs and attorneys' fees, regardless of the outcome" [ECF 19-1 § XII].

4

The court might well agree, since its dismissal of BANA's declaratory judgment action, that the bank's right to recover attorney fees has ceased under Section VI.H going forward—given it has no longer petitioned the court for instructions about account control—but today's prologue isn't history. Whether the litigation as framed today under Mr. Cartwright's claims falls under Section VI.H rather than Section XII, *see Ryan v. Laws. Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011) (specific clause governs over a general one according to its terms), an issue that the court need not now decide, BANA's original complaint sought the requisite instructions from the court under the Investment Services Agreement to seek attorney fees. That provides one plausible basis to permit this claim to proceed and, under the circumstances, prevents a piecemeal dismissal. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

BANA may file a counterclaim that "arises out of the transaction or occurrence that is the subject matter of [Mr. Cartwright's] claim," Fed. R. Civ. P. 13(a)(1)(A), and no one has argued that the bank should have proceeded by way of motion rather than claim, *see* Fed. R. Civ. P. 54(d)(2)(A). The court dismissed BANA's complaint because it proved moot in one respect, unripe in another respect, but otherwise materially duplicative of Mr. Cartwright's coercive action—namely, a dispute about the control of the trust account and assets that remained live. Given the court's discretion under the Declaratory Judgment Act, *see, e.g.,* 28 U.S.C. § 2201(a); *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010), the court favored the coercive action rather than a duplicative declaratory judgment action on the same issue. Whether BANA filed suit in good faith and whether Section VI.H ultimately affords full recovery will not be resolved today. The court won't rewrite the agreement to require that BANA effectively be a prevailing party to pursue a claim for some measure of fees, not when this provision plainly says what it says. For now, the bank has plausibly alleged one basis for attorney fees under Section VI.H.

5

That leaves only Mr. Cartwright's argument that this fee provision contravenes public policy. Indiana law has historically defended the freedom of parties to enter into contracts and presumes that parties have freely bargained for their contracts. *Hartman v. BigInch Fabricators & Constr. Holding Co.*, 161 N.E.3d 1218, 1220 (Ind. 2021); *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995) (citing *Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 147 (Ind. 1971)). "[I]t is in the best interest of the public not to restrict unnecessarily persons' freedom of contract." *Fresh Cut*, 650 N.E.2d at 1129 (citations omitted). "Despite this very strong presumption of enforceability, courts [refuse] to enforce private agreements that contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana." *Id.* at 1130.

Mr. Cartwright argues that Indiana law prohibits enforcement of a fee-shifting provision in favor of a losing party. He points to two contract cases. The first, *BKCAP, LLC v. Captec Franchise Tr. 2000-1*, 701 F. Supp.2d 1030, 1032-33 (N.D. Ind. 2010), concerned a lender seeking attorney fees for defending a borrower's suit. The contract allowed the lender to recover attorney fees incurred in "enforcing the rights of the Lender." *Id.* at 1033. The court found that the lender was defending a contract action, not enforcing one, so the fee-shifting provision plainly didn't apply. *Id.* at 1037-38. The case has less to do with invalidating a fee-shifting provision because of public policy than enforcing the provision precisely as written in accordance with Indiana law. *See id.* at 1039-40.

In the second case, *Willie's Constr. Co., Inc. v. Baker*, 596 N.E.2d 958, 963 (Ind. Ct. App. 1992), a contract allowed the construction company to recover attorney fees even when it breached the contract. The builder breached the construction contract and won attorney fees in the trial court. *Id.* The appellate court found that the trial court erred in awarding attorney fees to the breaching and unsuccessful party: "allowing a recovery [of attorney fees] in unsuccessful actions would create an unnecessary likelihood of frivolous or oppressive lawsuits" because their purpose is "to more fully

6

compensate a party who has successfully enforced his legal rights in court rather than to provide that person with free access to the courts at the expense of his opponent." *Id.* at 964 (citation omitted).

*Willie's Construction* establishes that, as a matter of public policy, Indiana disfavors a fee-shifting provision that allows a party to breach a contract, lose, and still recover attorney fees. Whether BANA has breached the Investment Services Agreement has not yet been decided. The clarification of its duties under the Investment Services Agreement, first framed in the declaratory judgment action but now framed in Mr. Cartwright's coercive action for breach of that agreement, remains a contested issue. The issue of attorney fees, and what impact Indiana public policy may have on their recovery, thus cannot be decided at the pleading stage. For now, BANA has alleged a plausible claim for attorney fees—at least in some measure.[3]

## CONCLUSION

Accordingly, the court DENIES Mr. Cartwright's motion to dismiss [ECF 121].

SO ORDERED.

August 15, 2022  *s/ Damon R. Leichty*
Judge, United States District Court

---

[3] Accordingly, the court need not address BANA's argument that, as the account's custodian but not as a trustee, the bank should be treated equivalent to a trustee under Indiana law.

7